# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELIZABETH AGUILAR,

    Plaintiff,

v.                                                                                         CIV 17-0003 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Brief in Support of Motion to Remand or Reverse (*Doc. 17*), filed on August 29, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 6, 7, 9.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

**I.**     **Procedural History**

Ms. Elizabeth Aguilar (Plaintiff) filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on December 13, 2012. Administrative Record[1] (AR) at 186-87. Plaintiff alleged a disability onset date of May 15, 2008. *See* AR at 186. Because Plaintiff's earning record showed that she had "acquired sufficient quarters of coverage to remain insured

---

[1] Documents 12-1 through 12-9 comprise the sealed Administrative Record. *See Doc. 12.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

through March 31, 2033[,]" Plaintiff was required to "establish disability on or before that date in order to be entitled to a period of disability and [DIB]." AR at 13.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 68-82) and on reconsideration (AR at 83-102). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 113-14. Both Plaintiff and a vocational expert (VE) testified during the second *de novo* hearing.[2] *See* AR at 33-67. ALJ Myriam C. Fernandez Rice issued an unfavorable decision on October 8, 2015. AR at 10-32. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 8-9), which the council denied on October 31, 2016 (AR at 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential five-step evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

---

[2] The ALJ held two hearings in this matter. *See* AR at 36, 67. The ALJ ended the June 3, 2015 hearing early after Plaintiff testified that she was unable to concentrate during the hearing. *See* AR at 67. The ALJ reconvened the hearing on September 3, 2015. *See* AR at 36.

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[3] ALJ Rice found that Plaintiff "has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date." AR at 15 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: a history of a head injury resulting in loss of vision in the left eye; headaches; vertigo; an anxiety related disorder; an affective disorder; and a chronic pain disorder." AR at 15 (citing 20 C.F.R. § 404.1520(c)). ALJ Rice also noted the following nonsevere impairments: "impairments due to gastroesophageal reflux

---

[3] ALJ Rice first found that Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2016." AR at 15.

disease, a history of treatment for syphilis, a history of uterine fibroid tumors, and a history of alcohol abuse in partial remission . . . ." AR at 15.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 16 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At Step Four, the ALJ considered the evidence of record, including records from Sandia Vision Center, Lovelace Women's Hospital, Family and Children's Eye Care Center of New Mexico, La Cueva Family Health Care, Presbyterian Family Health Care, a consultative psychological evaluation with Louis Wynne, Ph.D., South Valley Medical, University of New Mexico Hospital, Rio Grande Counseling & Guidance Services, Will Kaufman, M.D., Konstantin Konstantinov, M.D., a Third Party Function Report from Plaintiff's sister, Paula Chavez, and testimony from Plaintiff. AR at 17-24.

ALJ Rice found that Plaintiff has been "unable to perform any past relevant work." AR at 24 (citing 20 C.F.R. § 404.1565). Ultimately, the ALJ found that through the date last insured, Plaintiff

> has the [RFC] to perform medium work as defined in 20 [C.F.R.] 404.1567(c) except that she can lift up to 50 pounds occasionally and 25 pounds frequently; never climb ladders, ropes, or scaffolds; should avoid even moderate exposure to moving machinery or unprotected heights; limited to occupations not requiring left eye peripheral acuity or depth perception (has no vision in her left eye); is able to maintain, understand, and remember simple work instructions with occasional changes in work setting; and can perform only occasional interaction with the public.

AR at 18. The ALJ determined that, through the date last insured, Plaintiff can perform the jobs of janitor, dishwasher, and night cleaner. AR at 25. The ALJ relied on testimony

4

of the VE to conclude that "considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR at 25. Ultimately, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 15, 2008, through the date of [the ALJ's] decision." AR at 25 (citing 20 C.F.R. § 404.1520(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff contends that the following two issues require reversal: (1) "[t]he ALJ failed to comply with the required technique for determining the Plaintiff's [RFC], as dictated by Social Security Rulings (SSR) 96-7p and 96-8p;" and (2) "[t]he ALJ failed to give controlling weight to Plaintiff's treating source as dictated by" SSR 96-2p. *Doc. 17* at 2.

### A. The ALJ adequately assessed Plaintiff's RFC.

#### 1. Plaintiff's physical impairments

Plaintiff argues that ALJ Rice "failed to conduct the required function-by-function" analysis of Plaintiff's abilities required in order to formulate the RFC. *Doc. 17* at 5. Specifically, Plaintiff argues that the ALJ "did not evaluate the intensity, persistence, and limiting effects that the Plaintiff's chronic pain, frequent headaches, vertigo, anxiety with agoraphobia, and depression have on her ability to perform sustained, full time, work activities as dictated by SSRs 96-7p and 96-8p." *Id.*

With respect to her chronic pain, frequent headaches, and vertigo, Plaintiff cites to several medical records and contends that the ALJ did not account for these impairments in the RFC. *Id.* at 5-6. Yet, not only did the ALJ find that Plaintiff's chronic

6

pain, headaches, and vertigo were severe impairments at Step Two (AR at 15), the ALJ also cited to the very same medical records that Plaintiff uses to support her argument.

For example, Plaintiff notes she had diagnoses "of joint pelvis pain, chronic eye pain, [and] pain radiating to [the] top of her head" in 2012. *Doc. 17* at 6 (citing AR at 333-34). The ALJ also adequately discussed Plaintiff's joint pelvis pain diagnosis from Geoffrey D. Steffens, C.F.N.P., in February 2012 (*see* AR at 19 – citing AR at 355-56), and her December 28, 2012 appointment with Stephen J. Saxe, M.D., for "pain radiating on the top and back of her head and the left side of her face" (AR at 20 – citing AR at 333-34). Plaintiff mentions that her headaches and dizziness increased in 2013 (*Doc. 17* at 6 – citing AR at 401-24, 536-66), yet the ALJ also noted Plaintiff's increase in headaches and dizziness and her visits to Natalie D. Debassige, M.D., in June 2013, and to Gregory Steffens in September and December 2013 and January 2014 (AR at 20-21 – citing AR at 404-05, 554-66).

Plaintiff notes that in 2014 she "was assessed with chronic daily headache [sic] with strong migrainous characteristics and her confusional spells and vertigo were likely related to migraines." *Doc. 17* at 6 (citing AR at 940-1033). Most of the medical records in that page range have nothing to do with Plaintiff's headaches or vertigo, but deal, instead, with a tumor removal. *See* AR at 940-90, 998-1033. The ALJ did consider the relevant information, however, in thoroughly assessing the record of Plaintiff's August 29, 2014 neurology consultation with Lauren Oommen, M.D. AR at 21 (citing AR at 991-97). The ALJ noted Plaintiff's reports of pain, "spells of confusion, impaired memory, and feeling off balance when walking during a bad headache." AR at 21. "Dr. Oommen assessed chronic daily headache with strong migrainous characteristics that were

7

primarily post-traumatic" and recommended a change to Plaintiff's medications. AR at 21 (citing AR at 996).

Plaintiff cites treatment notes from her primary physician, Dr. Will Kaufman, M.D., who treated her for chronic dizziness, chronic pain, headaches, anxiety and PTSD. *Doc. 17* at 6 (citing AR at 750-65, 938). The ALJ also reviewed Plaintiff's treatment with Dr. Kaufman, as well as the letters Dr. Kaufman wrote on her behalf. AR at 21 (citing AR at 753, 761-62, 938), 23 (citing AR at 752-53). Plaintiff notes that her rheumatologist, Dr. Konstantin Konstantinov, said that she "had 'exceedingly positive pressure point [sic] with absolutely minimal pressure applied'" and diagnosed her with chronic pain. *Doc. 17* at 6 (citing AR at 1114-15). The ALJ cited this exact language along with other treatment notes from Dr. Konstantinov. AR at 21-22 (citing AR at 1114-15). Finally, Plaintiff points out her complaints of vertigo "throughout the record." *Doc. 17* at 6 (citing AR at 767-812, 938). The Court notes that the first span of records to which Plaintiff cites is irrelevant to her complaints of vertigo; rather, these records cover an admission for vaginitis, a cut on her left hand, abdominal pain, and a right eye injury. *See* AR at 767-812. The ALJ did comment on the remaining record cited by Plaintiff. AR at 21 (citing AR at 938 (a letter from Dr. Kaufman about his treatment of Plaintiff for chronic dizziness and pain, and mentioning her severe anxiety, PTSD, and insomnia)). Regardless, the ALJ adequately discussed Plaintiff's vertigo diagnosis throughout her opinion. *See* AR at 19 (discussing Plaintiff's testimony; noting that Plaintiff denied vertigo during a February 2012 appointment with Geoffrey Steffens (citing AR at 355), 20 (noting a May 8, 2013 visit at Presbyterian Urgent Care and complaints of a boil on her thigh, an upper respiratory infection, and vertigo (citing AR at

423), a May 29, 2013 appointment with complaints of worsening headache and vertigo (citing AR at 406), a June 7, 2013 appointment where Dr. Debassige diagnosed vertigo and headache (citing AR at 405)), 21 (noting that Dr. Kaufman was treating Plaintiff for vertigo in 2014 (citing AR at 753), noting that Dr. Oommen believed Plaintiff's "confusional spells and vertigo were likely migrainous" (citing AR at 996), and observing that Dr. Kaufman had been treating her for chronic dizziness and pain for a number of years (citing AR at 938)).

It is clear from the opinion that ALJ Rice examined the relevant evidence regarding Plaintiff's severe impairments of chronic pain, frequent headaches, and vertigo. Moreover, Plaintiff has not shown that any alleged error has resulted in any prejudice, because Plaintiff has not demonstrated that the ALJ should have included further limitations due to these impairments. *See*, *e.g.*, *Keyes-Zachary*, 695 F.3d at 1162-63 (finding that an "alleged error in the ALJ's decision did not . . . prejudice [plaintiff], because giving greater weight to [a physician's] opinion would not have helped her"). What Plaintiff really wants is for the Court to reweigh the evidence; this the Court may not do.

### 2. Plaintiff's mental impairments

Similarly, Plaintiff asserts that ALJ Rice "failed to evaluate the intensity, persistence and limiting effects of the Plaintiff's anxiety with agoraphobia and affective disorder on her ability to sustain in competitive employment." *Doc. 17* at 6. First, Plaintiff argues that the record shows she had marked restrictions in her activities of daily living, social functioning, and concentration, persistence or pace. *Id.* She also vaguely argues that the ALJ "failed to properly apply the required technique for analyzing mental

9

impairments set forth in 20 C.F.R." §§ 404.1520a and 416.920a. *Id.* Plaintiff, however, does not develop any argument to explain why the ALJ should have found marked restrictions, or to demonstrate how the ALJ erred in analyzing Plaintiff's mental impairments. *See id.*

Finally, Plaintiff alleges that "the ALJ failed to evaluate the intensity, persistence, and limiting effects that the Plaintiff's anxiety with agoraphobia, and depression have on her ability to perform sustained, full time, work activities as dictated by SSRs 96-7p and 96-8p." *Doc. 17* at 6-7. Social Security Ruling 96-7p clarifies how an ALJ may assess the credibility of an individual's statements of pain and other symptoms. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Social Security Ruling 96-8p provides guidance on how to assess a claimant's RFC. SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996). Plaintiff vaguely mentions that she "keeps a service dog for PTSD" and has sought treatment for bipolar II, PTSD, and agoraphobia since 2014. *Doc. 17* at 6. As the Commissioner points out, "the ALJ considered this evidence throughout her decision." *Doc. 20* at 16 (citing AR at 21, 22, 23).

Plaintiff develops absolutely no argument to support her theory that the ALJ erred in assessing her mental impairments. The Court will not supply Plaintiff's arguments for her. Plaintiff's Motion is denied on this issue.

### B. Plaintiff has waived her second point of error.

Plaintiff mentions the weight ALJ Rice gave to the nonexamining state agency physicians, Dr. Chiu[4] (Plaintiff's treating eye specialist in 2012), Ms. Palmer and Ms.

---

[4] Plaintiff mentions that the ALJ "failed to give controlling weight to Plaintiff's treating source as dictated by [SSR] 96-2p." *Doc. 17* at 2; *see also id.* at 7. She observes that the ALJ gave great

10

Fox (Plaintiff's counselors), and Plaintiff's sister, who submitted a Third Party Function Report. *Doc. 17* at 8 (citing AR at 22-23). Plaintiff then complains that "[t]he ALJ failed to state what weight she gave to the Plaintiff's treating physicians from La Cueva Family Healthcare, Presbyterian Healthcare Services, or South Valley Medical." *Id.* at 8-9 (citing AR at 330-59, 380-425, 438-42, 493-534, 535-66, 749-65, 813-48, 937-38, 1116). Plaintiff cites to a range of *treatment records* here, but she fails to cite a single, specific *medical opinion* that the ALJ allegedly failed to weigh. *Id.* The ALJ need not weigh every treatment record, only medical opinions. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

"[T]he Tenth Circuit has said that it was a 'dangerous practice' for a claimant to leave the court to 'comb through the briefs and the record' to ascertain what claimant's arguments were." *Heaps v. Colvin*, No. 13-CV-598-PJC, 2015 WL 321222, at *8 (N.D. Okla. Jan. 26, 2015) (quoting *Eacret v. Barnhart*, 120 F. App'x. 264, 265–66 (10th Cir. 2005) (internal citation omitted)). The Court refuses to comb through the above-cited pages, scouring the record for a mystery medical opinion that the ALJ allegedly failed to weigh. By failing to develop her argument, Plaintiff has waived this issue. *See Wall*, 561 F.3d at 1066.

---

weight, but not controlling weight, to Dr. Chiu's opinion. *Id.* at 8. Yet, Plaintiff fails to develop any argument on this issue. *See id.* Accordingly, she has waived it. *See Wall*, 561 F.3d at 1066.

11

## V.     Conclusion

The Court finds that the ALJ adequately assessed Plaintiff's physical and mental impairments in determining Plaintiff's RFC. Plaintiff waived her second point of error, because she failed to develop her argument in a way that would allow meaningful review by this Court. Therefore, the Court will deny Plaintiff's motion to remand in its entirety.

Wherefore,

**IT IS ORDERED** that Plaintiff's Brief in Support of Motion to Remand or Reverse (*Doc. 17*) is **denied**.

**IT IS FURTHER ORDERED** that the Court will enter concurrently herewith a Final Order, pursuant to Rule 58 of the Federal Rules of Civil Procedure, affirming the decision of the Acting Commissioner and dismissing this case with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent